THIRD DIVISION
JUNE 4, 2008

1-06-2076

| | | |
|---|---|---|
| WAYNE PALMER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| FREIGHTLINER, LLC, and ZELDA MORENO, | ) | |
| | ) | No. 04 L 1779 |
| Defendants and Third-Party Plaintiffs-Appellants | ) | |
| | ) | |
| | ) | |
| (ADT Security Services, Inc., | ) | Honorable |
| | ) | Randye Kogan, |
| Third-Party Defendant-Appellee). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiff, Wayne Palmer, filed a lawsuit in the circuit court of Cook County against Zelda

Moreno, individually, and as an agent of Freightliner, LLC, for damages sustained in a fall at

Freightliner's facility in Wood Dale, Illinois. Freightliner and Zelda Moreno appeal the trial court's

granting of third-party defendant ADT Security Services, Inc.'s motion for good-faith finding and

the court's application of Ohio law. On appeal, Moreno and Freightliner argue that the trial court

erred by holding that Ohio law applies, thereby granting ADT immunity from this lawsuit. For the

following reasons, we reverse the circuit court.

BACKGROUND

Plaintiff, Wayne Palmer, an Ohio resident, was a security system installer for ADT Security

Systems, Inc. (ADT). Palmer was assigned to ADT's Broadview Heights, Ohio office, but

occasionally worked in other offices in surrounding states. In December 2002, Palmer volunteered

to work in the Addison, Illinois office to install a security system at defendant Freightliner, LLC's Wood Dale, Illinois facility. Freightliner is a Delaware corporation with its headquarters in Portland, Oregon. Freightliner negotiated the contract at ADT's Addison, Illinois facility for installation and monitoring of a security system.

On December 2, 2002, Palmer and his coworker Jason Koproski reported to the ADT Addison, Illinois office and later began work at Freightliner's parts and distribution center in Wood Dale, Illinois. Palmer and Koproski were introduced to a few Freightliner personnel at the jobsite. They surveyed the area and then began installing the security system. The men began installing cable and contact points around overhead loading dock doors. After completing work in the north bay, the men began work in the south bay. The men leaned their ladder against the dock doors. The ladder was vertically extended over 20 feet into the air. While Palmer was near the top of the ladder tying cable, a Freightliner employee, Zelda Moreno, began to open the dock doors. Moreno claims that she did not see or know Palmer was working on the door. Palmer fell from the ladder and sustained various injuries.

On February 13, 2004, Palmer filed a complaint for negligence in the circuit court of Cook County against Moreno, individually, and as an agent of Freightliner. Moreno and Freightliner filed a third-party complaint for contribution against Palmer's employer, ADT. Palmer also filed a workers' compensation claim in Ohio for injuries sustained from his fall. ADT subsequently entered into a settlement agreement with Palmer for $7,500 through Ohio workers' compensation benefits system. ADT then filed a motion for a good-faith finding and dismissal from the Cook County lawsuit filed by Palmer against Moreno and Freightliner. ADT argued that under Ohio law it was

2

immune from further liability because it paid Palmer workers' compensation benefits, thereby discharging its obligation for the employment-related injury that gave rise to Palmer's lawsuit in Cook County. Freightliner and Moreno disputed the applicability of Ohio law and contended that under the choice of law analysis, all significant contacts, including the fact that the accident took place in Illinois, made Illinois law applicable.

The trial court held that Ohio had the most significant relationship with the occurrence and the parties and therefore Ohio contribution laws applied. The court examined Kabak v. Thor Power Tool Co., 106 Ill. App. 2d 190, 245 N.E.2d 596 (1969), Malatesta v. Mitsubishi Aircraft International, Inc., 275 Ill. App. 3d 370, 655 N.E.2d 1093 (1995), and Vickrey v. Caterpillar Tractor Co., 146 Ill. App. 3d 1023, 497 N.E.2d 814 (1986). The trial court held that these cases were instructive and explained that a significant factor in its examination was the effect of the plaintiff's underlying workers' compensation claim on the various parties. The trial court, quoting Kabek, 106 Ill. App. 2d 190, 245 N.E.2d 596 (1969), held that "in complying with the Ohio Workers' Compensation Act, [ADT] ha[d] the substantive right to look to Ohio law to determine whether it ha[d] any further obligation on account of a work-connected injury." The trial court found that Ohio law applied and that ADT's settlement with Palmer on his Ohio workers' compensation claim was made in good faith. The effect of the trial court's good faith finding and its application of Ohio law was dismissal of the third-party contribution action brought by Moreno and Freightliner against ADT. Thereafter, the court entered an order dismissing ADT from the lawsuit. Freightliner and Moreno appealed.

ANALYSIS

On appeal, Freightliner and Moreno argue that the trial court erred in applying Ohio law and finding that ADT's settlement of Palmer's Ohio workers' compensation claim was made in good faith. Freightliner and Moreno claim that the trial court's reliance on Kabak, Malatesta, and Vickrey was misplaced because each of those cases is factually distinguishable from the case at bar. They contend that, unlike those cases, in the instant case, ADT's payment of workers' compensation benefits under Ohio law was the only significant occurrence that took place in Ohio. They argue that Illinois law should apply because it has the most significant relationship with the occurrence and the parties. ADT, on the other hand, argues that the trial court correctly relied on Kabak, Malatesta, and Vickrey. ADT contends that the most significant contact analysis should focus on the employment relationship of the injured employee including the place of employment and the state in which the employee seeks workers' compensation benefits.

At issue is whether Illinois law or Ohio law applies to this case for the narrow issue of contribution. Although neither party disputes the applicability of Illinois law to the underlying cause of action for negligence, it is important to highlight the narrow scope of the conflict of laws question in this case and to distinguish between that narrow issue and the general applicability of Illinois law.

Under the Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/1 *et seq*. (West 2006)), parties that are subject to tort liability arising from the same injury share the payment of damages. BHI Corp. v. Litgen Concrete Cutting & Coring Co., 346 Ill. App. 3d 300, 306, 804 N.E.2d 707, 712 (2004). If a tortfeasor has settled with a plaintiff under the Act, the tortfeasor is then released from all liability for contribution to all other tortfeasors. BHI Corp., 346 Ill. App. 3d at 306, 804 N.E.2d

4

at 712. The Act only requires that a tortfeasor settle with a plaintiff in good faith. Johnson v. United Airlines, 203 Ill. 2d 121, 128, 784 N.E.2d 812, 818 (2003).

"The determination of whether a settlement has been executed in good faith must strike a balance between public policies promoting the encouragement of settlements and the equitable apportionment of damages among tortfeasors." Associated Aviation Underwriters, Inc. v. Aon Corp., 344 Ill. App. 3d 163, 175, 800 N.E.2d 424, 433 (2003). A settlement is not made in good faith where the practical effect of the settlement is to shift a disproportionally large and inequitable portion of the settling defendant's liability to the shoulders of another. Stickler v. American Augers, Inc., 325 Ill. App. 3d 506, 512, 757 N.E.2d 573, 578 (2001).

In Illinois, an "employer's immunity from a suit in tort by its employee as plaintiff is not a bar to a claim for contribution against it by a defendant held liable to such a plaintiff." Doyle v. Rhodes, 101 Ill. 2d 1, 14, 461 N.E.2d 382, 388 (1984); Unzicker v. Kraft Food Ingredients Corp., 203 Ill. 2d 64, 783 N.E.2d 1024 (2002). However, in the instant case, the plaintiff is an Ohio resident and filed his workers' compensation claim in Ohio. Illinois' rule authorizing a claim for contribution against an employer conflicts with Ohio's law on this point. In Ohio, "[e]mployers who comply with section 4123.35 of the [Workers' Compensation Act (Ohio Rev. Code Ann. §4123.35 (West 2002)] shall not be liable to respond in damages at common law or by statute for any injury *** [of] any employee in the course of or arising out of his employment *** during the period covered by such premium so paid into the state insurance fund." Ohio Rev. Code Ann. §4123.74 (West 2002). "Generally, an employer who possesses a certificate of workers' compensation insurance enjoys statutory immunity 'from non-intentional personal injury and wrongful death tort claims as a matter

5

of law.' " Wilson v. Marino, 164 Ohio App. 3d 662, 676, 843 N.E.2d 849, 860 (2005), quoting Walter v. Allied Signal, Inc., 131 Ohio App. 3d 253, 722 N.E.2d 164 (1999). Thus under Ohio law, Moreno and Freightliner cannot pursue a third-party contribution action against ADT if a good-faith finding is made in favor of ADT following settlement of Palmer's Ohio workers' compensation claim.

To direct us in resolving this issue, we turn to the Illinois Supreme Court decision in Townsend v. Sears, Roebuck & Co., 227 Ill. 2d 147, 879 N.E.2d 893 (2007), for guidance regarding our choice of law analysis. In Townsend, the Illinois Supreme Court discussed the apparent confusion in the courts regarding the proper analysis applicable to choice of law issues. The Townsend court endeavored to reaffirm those time-honored principles that may have become less clear over time.

In Townsend, the court throughly examined and relied upon the choice of law analysis from the Restatement (Second) of Conflict of Laws to resolve the conflict of laws in a personal injury action. In that case, the court explained that " 'the *** Restatement [(Second)] contemplates a two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against principles of §6 [of the Restatement (Second)] in light of relevant contacts identified by general provisions.' " Townsend, 227 Ill. 2d at 164, 879 N.E.2d at 903, quoting Crampton, Conflicts of Law: Cases, Comments-Questions, at 120. The supreme court found that, historically, the appellate court has "overemphasized the general sections of the *** Restatement [(Second)] of Conflict of Laws and have undervalued the specific presumptive rules." Townsend, 227 Ill. 2d at 162, 879 N.E.2d at 902. The Townsend court

emphasized the importance of considering the presumptive rules that are stated for different torts and different issues in tort. <u>Townsend</u>, 227 Ill. 2d at 162, 879 N.E.2d at 902.

Section 146 of the Restatement (Second) of Conflict of Laws is the starting point for this personal injury claim. Section 146, entitled "Personal Injuries," provides:

> "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in Section 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws §146, at 430 (1971).

In the case at hand, Palmer is a domiciliary of Ohio and employed by ADT in Ohio. However, Palmer's injuries occurred in Illinois, while working out of an Illinois ADT office. Freightliner's and Moreno's alleged tortious conduct occurred in Illinois. Under section 146, Illinois law would generally apply to this lawsuit because Palmer's injury and the defendants' alleged tortious conduct both occurred in Illinois. However, comment *d* of section 146 of the Restatement (Second) of Conflicts of Laws entitled "When conduct and injury occur in same state," instructs us to examine section 173 for other "issues that are less likely to be governed by the local law of the state of conduct and injury." Restatement (Second) of Conflict of Laws §146, Comment *d*, at 431 (1971). Using this analysis, we turn to section 173, entitled "Contribution and Indemnity Among Tortfeasors," as the appropriate section for the next phase of our analysis. Under the facts of this

case, the local state in which Palmer was injured is Illinois; however, he filed his claim for workers' compensation benefits in Ohio pursuant to the Ohio Workers' Compensation Act.

Section 173 states:

> "The law selected by application of the rule of §145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor." Restatement (Second) of Conflict of Laws §173, at 515 (1971).

Comment *d* of section 173 explains and instructs us to examine section 184, comment *c* to determine the "right to recover contribution or indemnity from one who is declared immune from tort liability to the injured person by an applicable workmen's compensation act." Restatement (Second) of Conflict of Laws §173, Comment *d*, at 516 (1971).

Comment *c* of section 184 states that "[a] person who is declared immune from liability for tort or wrongful death to an injured employee or his dependants by an applicable workmen's compensation statute *may* nevertheless be liable for contribution or indemnity to a third person against whom a judgment in tort or wrongful death has been obtained on account of the injury. Whether he will so be held liable is determined by the law selected by application of the rule of §173." Restatement (Second) of Conflict of Laws §184, Comment *c*, at 548-49 (1971). (Emphasis added.) We find comment *c* of section 173 very instructive because it allows an employer to be liable for contribution despite an applicable workers' compensation statute that grants the employer immunity from further liability beyond the workers' compensation payments.

As instructed by section 173, we now examine section 145 to determine whether Freightliner

and Moreno have a *right* to seek contribution from ADT.

Section 145, entitled "General Principle," states:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in §6.

(2) Contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws §145, at 414 (1971).

Comment *c* of section 145 states that "the interest of a state in having its tort rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and by the relation of the state to the occurrence and parties." Restatement (Second) of Conflict of

Laws §145, Comment *c*, at 416 (1971).

Our supreme court in <u>Townsend</u> examined how to apply section 145 in light of the principles of section 6 in resolving conflict of law issues. The Illinois Supreme Court recognized that the Illinois Appellate Court seems to have a descriptive discrepancy when applying sections 6 and 145 of the Restatement (Second) of Conflict of Laws. <u>Townsend</u>, 227 Ill. 2d at 167, 879 N.E.2d at 906. In its analysis, the supreme court first identifies the four principles listed in section 145(2) and then the court applies the general principles of section 6 to those contacts. <u>Townsend</u>, 227 Ill. 2d at 167, 879 N.E.2d at 905. We use that analysis in the same manner in resolving the issue in this case.

We disagree with ADT that the analysis should be focused only on the facts surrounding the contribution issue, specifically, the employer-employee relationship between Palmer and ADT. In order to properly settle the conflict of law question in this case, all of the facts of the case including those surrounding the allegedly tortious conduct must be examined under the principles of sections 6 and 145. In <u>Townsend</u>, the supreme court held that "[a] court's consideration of injury-causing conduct in a section 145 analysis includes all conduct from any source contributing to the injury." <u>Townsend</u>, 227 Ill. 2d at 169, 879 N.E.2d at 906.

The first principle to be considered under section 145 (2) is the place of injury. Palmer was injured while working from the ADT Illinois office performing work in Illinois pursuant to a contract negotiated between Freightliner and ADT in Illinois. Thus, Illinois has a strong relationship to the occurrence and the parties and is of great importance in "the most significant relationship" analysis discussed in <u>Townsend</u>. These are not merely fortuitous contacts that would tend to minimize Illinois' relationship with the occurrence and parties.

The second principle to be considered is the place where the conduct causing the injury occurred. Restatement (Second) of Conflict of Laws §145 (1971). Palmer alleges in his complaint that Freightliner's and Moreno's tortious conduct occurred in Illinois. Freightliner's and Moreno's third-party complaint for contribution alleges that ADT failed to properly train and instruct Palmer to create a safe work environment over the course of his employment with the company. Palmer was employed and trained in Ohio for the duration of his employment with ADT and was occasionally dispatched to work in other states such as Illinois, where he sustained an injury. When weighed against the place of tortious conduct, this factor is neutralized because injury-causing conduct is alleged to have occurred in both Illinois and Ohio.

The third principle is the domicile, residence, place of incorporation, and the place of business of the parties. Here, Palmer is a domiciliary of Ohio and the defendant Moreno is a domiciliary of Illinois. The defendant Freightliner is a Delaware corporation with its headquarters in Portland, Oregon. However, Freightliner does business in Illinois. ADT is incorporated in Delaware, headquartered in Florida, and does business in both Illinois and Ohio. Thus, no one state has a significant relationship under this analysis. Illinois, arguably, has slightly more of a relationship under this analysis; however, no state enjoys a strong and clearly superior relationship under these facts.

The fourth and final principle under section 145(b)(2) is the place were the relationship between the parties is centered. In this case, the relationship between Palmer, Freightliner and Moreno arose from the parties relationship with ADT. Palmer was employed by ADT in Ohio, but was dispatched to perform work in Illinois from ADT's Illinois office. Freightliner entered into a

contractual relationship with ADT in Illinois through ADT's Illinois agents.  Moreno is employed by Freightliner in Illinois.  This principle favors Illinois.

To summarize the section 145(b)(2) principles, the first and fourth principles favor Illinois; the second principle is neutral, and the third principle only slightly favors Illinois.  The analysis is not simply a mathematical summation.  Townsend, 227 Ill. 2d at 168-69, 879 N.E.2d at 905.  We must now analyze these principles in light of the general principles embodied in section 6 pursuant to section 145(a).  The commentary to section 145 and the Townsend court's analysis explain that a detailed examination of all seven general principles of section 6 is not necessary because the general principles vary in importance.  Townsend, 227 Ill. 2d at 169, 879 N.E.2d at 906; Restatement (Second) of Conflict of Laws §145, Comment b, at 415 (1971).  The commentary to section 145 explains that the factors of greater importance include:  the needs of the interstate and international systems; the relevant policies of the forum state; the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue; as well as the ease in the determination and application of the law to be applied.  Restatement (Second) of Conflict of Laws §145, Comment b, at 415 (1971).

Under Ohio law, "an employer who possesses a certificate of workers' compensation insurance enjoys statutory immunity 'from non-intentional personal injury and wrongful death tort claims as a matter of law.' "  Wilson v. Marino, 164 Ohio App. 3d 662, 676, 843 N.E.2d 849, 860 (2005), quoting Walter v. Allied Signal, Inc., 131 Ohio App. 3d 253, 722 N.E.2d 164 (1999).  The Ohio Supreme Court has held that "[t]he statutory and constitutional immunity granted to complying employers is crucial to workers' compensation law."  Kendall v. U.S. Dismantling Co., 20 Ohio St.

3d 61, 65, 485 N.E.2d 1047, 1051 (1985). "The legislature granted this immunity to complying employers in exchange for their relinquishment of all their common-law defenses to claims of work-related injury." Kendall, 20 Ohio St. 3d at 65, 485 N.E.2d at 1051. In this case we recognize that Ohio has an important interest in protecting its compliant employers from non-intentional personal injury and wrongful death tort claims. ADT employed Palmer in Ohio, complied with Ohio workers' compensation laws and, therefore, under the Ohio statute, is immune from all nonintentional personal injury and wrongful death tort claims, including third-party claims arising out of employment activities. Under the analysis of the Restatement (Second) of Conflict of Laws and Townsend, this is true so long as Ohio law is applicable to the facts.

In Illinois, employers enjoy immunity from employee lawsuits under the Workers' Compensation Act. 820 ILCS 305/5(a) (West 2002). However, employers are not immune from contribution claims brought as third-party actions. The supreme court in Kotecki v. Cyclops Welding Corp., 146 Ill. 2d 155, 585 N.E.2d 1023 (1991), held that a third party may bring a contribution claim against an employer; however, the court limited the employer's liability to its statutory liability under the Illinois Workers' Compensation Act. "[The] court attempted to balance the competing interests of the employer, as a participant in the workers' compensation system, and the equitable interests of the third-party defendant in not being forced to pay more than its established fault." Virginia Surety Co. v. Northern Insurance Co. of New York, 224 Ill. 2d 550, 558, 866 N.E.2d 149, 154 (2007). Thus, contrary to ADT's assertion that its payment of Palmer's Ohio workers' compensation claim immunizes it from further liability, it may be held liable for contribution in this action despite Ohio's workers' compensation statute.

13

When we examine the factors of sections 145(a) and 6 of the Restatement (Second) of Conflict of Laws, we conclude that Illinois has the most significant relationship with the occurrence and the parties. Under Illinois law, third-party defendants are permitted to bring contribution lawsuits against a plaintiff's employer to prevent paying more than its established share of fault for the injury. ADT is subject to Illinois law on this point because of the specific facts of this case. As discussed, both Freightliner and ADT are incorporated in other states and have principal places of business in other states. However, both conduct business in Illinois. While conducting this business, Freightliner contracted with ADT through its Illinois agents, and Palmer was injured at Freightliner's Illinois facility while performing the service negotiated in the contract.

Illinois has a strong interest in ensuring defendants the right to bring a contribution action against an employer who may have contributed to the injury of its employee. Freightliner therefore had the expectation to be protected by Illinois law. While we agree that ADT has a reasonable expectation to be immune from nonintentional personal injury lawsuits under the Ohio Workers' Compensation Act, ADT has overstated the extraterritorial effect of the Ohio law. As a national company with offices in many states, ADT exposes itself to the tort laws of many jurisdictions in which it chooses to do business. It may not escape the laws of one jurisdiction merely by having an employee from another jurisdiction with more favorable laws provide its contractual services in the jurisdiction with the laws which it does not favor.

The specific facts of this case, when examined through the prism of the Townsend case, as well as the Restatement (Second) of Conflict of Laws, lead us to conclude that Illinois has the most significant relationship with the occurrence and the parties under these facts, and therefore ADT is

subject to the contribution laws of Illinois. Thus, ADT's settlement with Palmer was not a bar to the third-party action brought by Moreno and Freightliner in Palmer's negligence lawsuit.

Accordingly, the order of the circuit court of Cook County is reversed and the matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GREIMAN and THEIS, JJ., concur.